### WHITE *against* WHEATON and another.

*A,* on the 25th of *November,* 1837, executed a mortgage deed of land to *B,* to secure a debt due from *A* to *B ;* but *B* did not procure such deed to be recorded until the 9th of *February,* 1838. On the 5th of *January,* 1838, *A* executed and delivered to *C,* an instrument, purporting in its terms to be a mortgage deed of the same land, to secure a debt due from *A* to *C.* The latter instrument was attested by two witnesses, one of whom was the wife of *A ;* and was immediately recorded. On a bill in chancery brought by *C* against *B* and *A,* it was held, 1. that although the deed to *C* was first recorded, yet *C,* by reason of the defect therein, acquired thereby no legal title ; and *B,* by procuring the deed to him to be recorded before any legal conveyance was made to any one else, became vested with the legal title ; 2. that the delay of *B,* in the absence of all fraud on his part, was no ground for postponing his title to *C's ;* 3. that the declaration of *A* to the agent of *C,* not in the presence of *B,* that the object of *B* in such delay, was to avoid the payment of taxes, did not show any fraud in *B,* such declaration not being admissible for this purpose ; 4. that *C* having stated in his bill, that the deed to him was not duly attested, one of the witnesses thereto being the wife of the mortgagor, *B,* in his defence to such bill, was not estopped, by any proceedings in a former suit, from denying the validity of such deed ; 5. that if those proceedings furnished matter of estoppel against *B, C* could avail himself thereof at law, and there was no need of the interposition of a court of chancery.

THIS was a bill in chancery, with a supplemental bill, seeking the reformation of a defective deed, a decree of foreclosure, and an injunction against proceedings at law.

The case, as stated in the plaintiff's original and supplemental bills, and found by the court, was as follows. On the 5th of *January,* 1838, *Francis L. Wheaton* was justly indebted to *Charles Dyer,* by his promissory note for 750 dol-

*Windham,*
July, 1844.

White
*v.*
Wheaton.

lars, payable in five years; and to secure the payment of such note, *Wheaton,* on the same day, executed and delivered to *Dyer* a mortgage deed of a tract of land in *Pomfret;* which deed was immediately recorded. Previously, *viz.* on the 25th of *November,* 1837, *F. L. Wheaton* had mortgaged the same tract of land to *Levi Wheaton,* to secure a debt due to him; but the deed was not recorded until the 9th of *February,* 1838. When the first-mentioned mortgage was executed, *F. L. Wheaton* informed the agent of *Dyer,* that he had given such mortgage to *Levi Wheaton,* but that it was not recorded, because the mortgagee wished to avoid being taxed for the mortgage debt. *Dyer* afterwards, for a valuable consideration, assigned and conveyed to *Adams White,* the present plaintiff, all his (*Dyer's*) interest in said note of *F. L. Wheaton* to him, and to the mortgaged premises conveyed to secure it; which note is still unpaid.

During the pendency of the original bill, the plaintiff discovered, that the mortgage deed from *F. L. Wheaton* to *Dyer* was not duly attested, in this, that one of the two subscribing witnesses was the wife of the mortgagor; but, at the time of the execution of such deed, it was supposed, by *F. L. Wheaton* and the agent of *Dyer,* who procured it to be given, that it was executed, in all respects, so as to convey the title to the premises to *Dyer,* as by a good and sufficient deed of mortgage; and *Dyer* himself was wholly ignorant that such subscribing witness was the wife of the mortgagor.

When the mortgage from *F. L. Wheaton* to *Dyer* was executed, *Dyer* had a valid lien upon the premises, by a legal attachment thereof, for the debt secured by said note; which lien, both at law and in equity, was paramount to the security which *Levi Wheaton* then had for his debt; and this lien was by said *Dyer* relinquished and discharged, in consideration of his debt being secured, as he then supposed, by a good and sufficient mortgage.

After the execution and recording of both of said mortgage deeds, *Levi Wheaton* brought his bill in equity against *Dyer* to the superior court, held at *Brooklyn,* on the first *Tuesday* of *October,* 1841, therein showing, that said deed from *F. L. Wheaton* to *Dyer,* was by him, (*F. L. Wheaton,*) duly signed and sealed, witnessed by two subscribing witnesses, and acknowledged by the mortgagor to be his free act and deed, and

*Windham,*
*July, 1844.*

White
*v.*
Wheaton.

was, on the day of the date thereof, recorded in the town-clerk's office ; showing also, that inasmuch as the mortgage to *Dyer* was recorded before the one to *Levi Wheaton*, and as it was, in all respects, executed with the requisites of a lawful deed, *Dyer* had at law a good title to the premises, though *Levi Wheaton*, the plaintiff in that bill, claimed to have a higher and a better title in equity, because, as he averred, *Dyer*, at the time of receiving his deed, had *notice* of the prior incumbrance ; and praying that the title of *Dyer* be postponed to that of such plaintiff. On this bill the superior court, at its term held on the fourth *Tuesday* of *January*, 1842, after a full hearing, found the facts in controversy as follows : That *Francis L. Wheaton*, on the 25th of *November*, 1837, being indebted to *Levi Wheaton*, executed and delivered to him the deed of mortgage before described ; that afterwards, on the 5th of *January*, 1838, said *Francis* being also indebted to said *Dyer*, in the sum of 750 dollars, executed and delivered to him the promissory note and mortgage deed before described ; which last-mentioned deed was, on the same day, duly recorded in the town records ; that said note remains unpaid ; that afterwards, on the 9th of *February*, 1838, said *Levi* caused his deed to be duly recorded ; and that the reason for his delay in recording his deed, was, that he did not suppose that said *Francis* owed any debt, which might be made to interfere with his lien, and that it would be for the mutual accommodation of the parties to withhold it from the records; and that in consequence of such delay, said *Levi Wheaton's* title at law was postponed to that of said *Dyer*. The superior court further found, that there were no facts in that case, which called for the interposition of a court of equity to postpone *Dyer's* legal title, and therefore, dismissed the bill. (*a*)

The plaintiff in the present bill averred, that *Levi Wheaton* ought now to be estopped, by his allegations in the former bill and the finding of the court, from claiming title to the mortgaged premises, except as subject to *Dyer's* mortgage.

The case was reserved for the advice of this court as to what decree should be passed.

(*a*) This is the same case which was brought before the supreme court of errors, in *July*, 1842, by motion in error, and is reported 15 *Conn. R.* 307—312.

*Strong,* for the plaintiff, after remarking that the plaintiff was undoubtedly entitled to the relief sought, as against *Francis L. Wheaton,* the mortgagor, contended, that he was also entitled to relief against *Levi Wheaton,* the first mortgagee, on two grounds.

1. That he had superior equity. The deed to *Dyer* was first recorded ; and equity will correct the mistake in that deed, and treat it as a valid security. *Smith* v. *Chapman* & al. 4 *Conn. R.* 344. Then on what ground does *Levi Wheaton* stand ? His deed was not only not recorded until after *Dyer's,* but it was withheld from record, by *a fraud upon the law ;* it being done either to enable him to screen his property from taxation, or to hold out the mortgagor, confessedly a bankrupt, as a man of property. And this is not a case of *negligence* merely, occurring after the delivery of the deed, but was a part of the agreement made at the time of its delivery, for an improper and fraudulent purpose—such as a court of equity will not sanction.

2. That *Levi Wheaton* is estopped to deny the validity of *Dyer's* deed, by the proceedings in the former suit. The bill and the decree of the court are both based on the idea of *Dyer's legal* title ; and the bill sought a postponement of that legal title on *equitable* grounds. Shall *L. Wheaton* now be allowed to turn round, and assert that the legal title is in himself, and not in *Dyer ?*

*Welch* and *Backus,* for the defendant, *Levi Wheaton,* contended, 1. That the legal title was in him, his deed having been, not only first executed and delivered, but *recorded* also before there was any legal conveyance to *Dyer.* For the purpose of transferring the legal title, a deed with but one competent witness, is *no deed.* *Carter* v. *Champion* & al. 8 *Conn. R.* 549.

2. That *L. Wheaton* had practised no fraud on *Dyer,* on account of which a court of equity would postpone the legal title of the former. In the first place, if *L. Wheaton,* from any motive whatever, omitted to record his deed, this was no injury to *Dyer.* *Wheaton* run the risk of this property's being attached by, or mortgaged to, another creditor, in the meantime ; but this was all. But secondly, the finding in this case shows nothing relative to *L. Wheaton's* motive for with-

*Windham,*
*July, 1844.*

White
*v.*
Wheaton.

holding his deed from record : it only shows what *Francis L. Wheaton said* on that subject, not in the presence of *Levi Wheaton.*

3. That the defendant *L. Wheaton,* is not estopped, by the former suit, to deny the validity of the deed to *Dyer.* In the first place, the due execution of that deed, was not *in issue,* in the suit referred to. See *Wheaton* v. *Dyer,* 15 *Conn. R.* 307. Secondly, the plaintiff in the present suit states, in his bill, the fact, that the deed in question was not duly attested, one of the subscribing witnesses being the wife of the mortgagor. Can the defendant be estopped from denying what the plaintiff himself alleges in his bill, and makes it the basis of his asking for the interposition of the court ? Thirdly, estoppels are not favoured in law, much less in equity, where more liberal principles prevail. *Leicester* v. *Rehoboth,* 4 *Mass. R.* 180. *Bridgewater* v. *Dartmouth, Id.* 273. *Smith* v. *Sherwood,* 4 *Conn. R.* 276.

WAITE, J. When the case, involving the title to the property in question, was before us, upon a former occasion, (*Wheaton* v. *Dyer,* 15 *Conn. R.* 307.) it was supposed, by the parties, that *Charles Dyer,* from whom the present plaintiff derives title, had a legal and valid mortgage upon the property. Although the deed to him was executed subsequently to the deed to *Levi Wheaton,* yet as it was first recorded, it was conceded, that he had acquired the *legal title.* The question then was, whether that *legal* title ought to be set aside, by a court of chancery, in favour of *L. Wheaton,* the first mortgagee, who had acquired but a mere equitable title. We held, that upon the facts then presented to us, no sufficient cause was shown for such interference.

But it now appears, that *Dyer's* deed is imperfect, having but one competent subscribing witness, whereas our statute requires the attestation of two such witnesses. *Wheaton,* by causing his deed to be recorded, before any *legal* conveyance was made to *Dyer,* has acquired the *legal* title, and *Dyer* has nothing but an equitable one. The case is therefore the reverse of what it was supposed to be, on the former occasion. The question is, whether the plaintiff has shown a sufficient cause to justify a court of chancery in setting aside the legal title of the first mortgagee.

*Wheaton,* by withholding his mortgage deed from record, exposed himself to the loss of his security, in case the property should, in the meantime, be conveyed to another. But in the absence of all fraud on his part, he would not suffer by this delay, provided he caused his deed to be recorded, and his title thereby perfected, before the property became legally vested in some other person. And this, it is now conceded, he has done.

But it is said, that he has been guilty of a fraud in keeping his deed from the records, as his object was to avoid the payment of taxes upon his debt. It is unnecessary to consider what effect his conduct would have upon the case, provided that fact had been found by the court below. But it is a sufficient answer to the plaintiff's claim upon this subject, that no such fact is found. All that the case shows, is, that the mortgagor *stated* to the plaintiff's agent, that such was the object of *Wheaton,* the first mortgagee—a mere declaration of the mortgagor, in the absence of *Wheaton,* and after the conveyance to him had been made. In the case of *Barrett* & ux. v. *French* & al. 1 *Conn. R.* 365. it is said to "have uniformly been decided, that the declarations of the grantor, when the grantee is not present, prior or subsequent to the deed, cannot be admitted in evidence to invalidate the deed."

Again, it is said, that *Levi Wheaton* is estopped from denying the legality of the deed to *Dyer,* by reason of the proceedings in the former suit, wherein he had alleged in his bill such legality. But the present plaintiff in his bill states, that "the deed was not duly attested, in this, that one of the two subscribing witnesses to the same, was the wife of the mortgagor." How then can *Wheaton* be estopped from asserting in his defence to the present suit, a fact, which the plaintiff has alleged in his bill to be true? If he could be, it would be a novel application of the doctrine of estoppel.

But further, if *Wheaton* can be estopped, by the proceedings in the former case, what necessity for a resort to a court of chancery? The plaintiff may proceed with the trial of his action at law, and if the defendant *Wheaton* sets up the defect in the deed to *Dyer,* the plaintiff may produce those proceedings. Upon the plaintiff's own claim, therefore, we see no need of the interference of a court of chancery. His remedy, if he has one, is adequate at law.

*Windham,*
July, 1844.
———
White
*v.*
Wheaton.

Upon the whole, we are satisfied, that upon the facts, as they are now found and presented to us, the plaintiff is not entitled to the relief prayed for, as against *Levi Wheaton,* the first mortgagee ; and our advice is, that the bill, as against him, should be dismissed.

In this opinion the other Judges concurred.

Bill dismissed, as against *L. Wheaton.*